# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| PAUL OAKESON,<br><br>       Plaintiff,<br><br>v.<br><br>AERO-SPACE COMPUTER SUPPLIES, INC.,<br><br>       Defendant. | Case No. 22-CV-698-JPS<br><br><br>**ORDER** |

### 1. INTRODUCTION

On November 29, 2022, Non-party Century Fasteners Corporation ("Century") filed a motion to quash the November 17, 2022 subpoena served on it by Defendant Aero-Space Computer Supplies, Inc. ("Defendant"). ECF No. 7. For the reasons set forth herein, the Court grants in part and denies in part the motion to quash.

### 2. LEGAL STANDARD

The Federal Rules of Civil Procedure make clear that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Evidence is relevant in a discovery context if it is relevant to the subject matter of the litigation as Rule 26(b)(1) states, not just the particular issues presented in the pleadings." *Eggleston v. Chi. Journeyman Plumbers' Loc. Union No. 130, U.A.*, 657 F.2d 890, 903 (7th Cir. 1981).

Nevertheless, the Rule imposes a requirement on the Court to "limit the frequency or extent of discovery otherwise allowed by these rules or by

local rule if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). Additionally, the Rules explain that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). The Court is required to "enforce this duty," and "must quash or modify a subpoena that subjects a person to undue burden." *Id.*; Fed. R. Civ. P. 45(d)(3)(A)(iv).

In so analyzing, the Court must "balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." 8 Cyclopedia of Fed. Proc. § 26:15 (3d ed. Apr. 2022 update). Courts consider factors such as "(1) the relevance of the information requested, (2) the need of the party for the documents, (3) the breadth of the document request, (4) the time period covered by the request, (5) the particularity with which the party describes the requested documents, and (6) the burden imposed." *Id.*; *Morrow v. Air Ride Techs., Inc.*, No. IP-005-113, 2006 WL 559288, at *2 (S.D. Ind. Mar. 6, 2006).

Additionally, "non-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue" because non-parties have a "different set of expectations than parties." *United States ex rel. Tyson v. Amerigroup Ill., Inc.*, No. 02-C-6074, 2005 U.S. Dist. LEXIS 24929, at *14 (N.D. Ill. Oct. 21, 2005) (internal citation omitted). While "parties to a lawsuit must accept [the] travails [of discovery] as a natural concomitant of modern civil litigation[,] . . . [n]on-parties have a different set of expectations." *Id.* (internal citation omitted). Accordingly, "concern for the unwanted burden thrust upon non-parties is

a factor entitled to *special weight* in evaluating the balance of competing needs." *Id*.

3.   **RELEVANT FACTS**

Plaintiff Paul Oakeson ("Plaintiff") filed the present action against his former employer, Defendant, in Dodge County Circuit Court on May 3, 2022. ECF No. 1-1 at 4. The action relates to the Confidentiality and Non-Solicitation Agreement Plaintiff entered into with Defendant. *Id*. at 7. Plaintiff seeks declaratory judgment as to the validity and enforceability of both the Choice of Law and Non-Solicitation clauses therein. *Id*. at 9. Plaintiff asserts that the issues are ripe for declaratory relief because Defendant threatened to sue Plaintiff for violating the Non-Solicitation clause. *Id*. The Non-Solicitation clause is stated as follows:

> A. <u>Agreement Not to Solicit Customers</u>. During his or her employment by ASCS or any successor to ASCS to which this Agreement is assigned, and for twelve (12) months following his or her separation from such employment for any reason, Employee agrees not to directly or indirectly solicit, induce, divert, or take away business of ASCS from, or sell or render products or services competitive with products or services of ASCS to, any customer of ASCS which was a customer at any time during the last one year of Employee's employment with ASCS.

ECF No. 8 at 2. On June 16, 2022, Defendant removed the action to federal court. ECF No. 1. Defendant did not, and has not, asserted any claim against Plaintiff nor against Plaintiff's current employer, Century. *See* ECF No. 4.[1] Therefore, the sole claim before the Court is Plaintiff's single declaratory

---

[1] In other words, Defendant has not attempted to assert a claim against Plaintiff for his alleged violation of the Non-Solicitation clause. Accordingly, whether that clause has or has not been violated is not an issue before the Court.

judgment count regarding the validity of specific provisions of the Confidentiality and Non-Solicitation Agreement.

On November 15, 2022, Defendant served Requests for Production on Plaintiff. ECF No. 9-2; ECF No. 9 at 2. The relevant requests are reproduced below:

> **REQUEST NO. 6:** All emails, notes or other contemporaneous and relevant writings, text messages or recordings (such as diaries, calendars, journals, and photographs) made by you or your agents relating to the claims in this case.
>
> **REQUEST NO. 7:** All emails, notes or other contemporaneous and relevant writings, text messages or recordings (such as diaries, calendars, journals, and photographs) made between you and any individual employed at the following entities from August 1, 2021 to present:
> 1. Accurate Fabrication, LLC;
> 2. Ajax Spring & Manufacturing, Co.;
> 3. Alliance Laundry Systems LLC;
> 4. Duo-Safety Ladder Corp.;
> 5. Fabrication Technologies Inc.;
> 6. Fox Valley Metal-Tech, Inc.;
> 7. Gardner Manufacturing Co.;
> 8. Hatco Corporation;
> 9. Hubbell Power Systems, Inc.;
> 10. IGM Solutions Inc.;
> 11. IMS Engineered Products, LLC;
> 12. Kapco Inc.;
> 13. Maysteel Industries, LLC;
> 14. Mech-Tronics Corporation;
> 15. Montana Metal Products LLC;
> 16. Trend Technologies, LLC;
> 17. Wolf Appliance, Inc.; and
> 18. Xymox Technologies, Inc.

**REQUEST NO. 8:** The original and all drafts of any agreements between you and Defendant relating to your employment or the allegations in the pleadings.

**REQUEST NO. 10:** All communications between you and Century Fasteners Corporation related to the allegations contained in the Complaint or your employment at Century Fasteners Corporation as a Regional Sales Manager.

**REQUEST NO. 11:** The original and all drafts of any agreements between you and Century Fasteners Corporation relating to your employment as Regional Sales Manager or the allegations in the Pleadings.

ECF No. 9-2.

On November 17, 2022, Defendant served a subpoena on Century—Plaintiff's current employer—making the following four requests:

**REQUEST NO. 1**: Please produce all communications between Century Fasteners Corporation and Paul Oakeson related to his employment at Century Fasteners Corporation as a Regional Sales Manager.

**REQUEST NO. 2:** Please produce the original and all drafts of any agreements between you and Paul Oakeson related to his employment at Century Fasteners Corporation.

**REQUEST NO. 3:** Please produce all communications between Century Fasteners Corporation and Matthew V. Fisher regarding Paul Oakeson.

**REQUEST NO. 4:** Please produce all emails (including but not limited to the email address poakeson@centuryfasteners.com), notes or other contemporaneous and relevant writings, text messages or recordings (such as diaries, calendars, journals, and photographs) made between Paul Oakeson and any individual employed at the following entities from **August 1, 2021 to present**:

a. Accurate Fabrication, LLC;
b. Ajax Spring & Manufacturing, Co.;
c. Alliance Laundry Systems LLC;
d. Duo-Safety Ladder Corp.;
e. Fabrication Technologies Inc.;
f. Fox Valley Metal-Tech, Inc.;
g. Gardner Manufacturing Co.;
h. Hatco Corporation;
i. Hubbell Power Systems, Inc.;
j. IGM Solutions Inc.;
k. IMS Engineered Products, LLC;
l. Kapco Inc.;
m. Maysteel Industries, LLC;
n. Mech-Tronics Corporation;
o. Montana Metal Products LLC;
p. Trend Technologies, LLC;
q. Wolf Appliance, Inc.; and
r. Xymox Technologies, Inc.

ECF No. 8 at 3–4; ECF No. 9-1.

4. ANALYSIS

In support of its motion to quash, Century argues that the subpoena imposes an undue burden on it because it requests documentation that is "wholly unrelated to the only pending cause of action"; that is available from other sources—namely, Plaintiff; that is overbroad; and that is protected by attorney client privilege and/or the work product doctrine. ECF No. 8 at 1.

4.1 Available from Other Sources

Century argues that the subpoena seeks "information that is available through other sources" which indicates that it is "designed to annoy and harass Century by imposing an unnecessary burden" on it. ECF

No. 8 at 7. Specifically, Century argues that Defendant's "first, second, and fourth requests" to Century "all seek documents and/or communications involving Oakeson, who is a party." *Id*. at 8. Therefore, Century argues, that "information should be available from Oakeson, without having to burden Century." *Id*. In response, Defendant argues that the documents requested are "not Oakeson's private documents," but rather are "Century's records," and that Defendant is entitled to seek them directly from Century, the more reliable and complete source of the proposed discovery. ECF No. 11 at 8.

"[A] district court has discretion to modify or quash a subpoena if it seeks discovery that is 'unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive . . . .'" *United States v. Dean Foods Co.*, No. 10-CV-59, 2011 U.S. Dist. LEXIS 13900, at *5 (E.D. Wis. Feb. 3, 2011) (quoting Fed. R. Civ. P. 26(b)(2)). "The Court is not inclined to subject a nonparty to unduly burdensome discovery for information that is, for the most part, readily available from a party." *Craigville Tel. Co. v. T-Mobile United USA, Inc.*, No. 19-CV-7190, 2022 U.S. Dist. LEXIS 226705, at *12–13 (N.D. Ill. Dec. 16, 2022) (collecting cases in which court quashed subpoena served on non-party because the documents sought were duplicative of those directed to a party).

At the same time, however, a party is "entitled to request" records directly from third-party neutral record-holders since they are more "reliable and complete sources of the proposed discovery." *In re Pansier*, No. 18-22297-beh, 2019 Bankr. LEXIS 911, at *9–10 (E.D. Bankr. Mar. 22, 2019).

The requests implicated in this argument are, according to Century, Requests Nos. 1, 2, and 4. ECF No. 12 at 2. The first requests production of

all communications between Century and Plaintiff related to his employment at Century as a Regional Sales Manager. ECF No. 8 at 3. Communications between Plaintiff and non-party Century regarding his employment are not the equivalent of neutral records from a bank, as were contemplated in *In re Pansier.* Defendant's attempt to analogize the present situation to that in *In re Pansier* is unavailing.

Request No. 1 made on Century, is, indeed, duplicative of at least part of Request No. 10 made on Plaintiff. Request No. 10 seeks all communications between Plaintiff and Century related to both the allegations contained in the Complaint as well as relating to Plaintiff's employment at Century as a Regional Sales Manager. ECF No. 9-2 at 5. Accordingly, Request No. 1 on Century is duplicative to the extent that it seeks communications between Plaintiff and Century regarding Plaintiff's employment at Century as a Regional Sales Manager. The Court will grant Century's motion to the extent that it seeks to quash Request No. 1 made upon it.

Century also argues that Request No. 2, seeking "the original and all drafts of any agreements" between Century and Plaintiff, is duplicative of Request No. 11 made upon Plaintiff. Again, the only difference between the two requests is that that which was made upon Plaintiff additionally seeks the original and all drafts of any agreements between Plaintiff and Century relating to the allegations in the pleadings. ECF No. 9-2 at 5. Employment-related agreements entered into between Plaintiff and Century are not exactly analogous to neutral bank records, but the Court cannot deny that Century may be a better source for employment-related agreements that, presumably, it drafted and proffered. Moreover, Century has provided no

specific facts or argument as to how it is allegedly unduly burdened by the request. The Court will deny the request to quash Request No. 2.

Request No. 4 is also duplicative of Request No. 7. Request No. 4 seeks from Century all emails (including from Plaintiff's Century work email address), notes or other contemporaneous and relevant writings, texts, or recordings made between Plaintiff and any individual employed by 18 specified entities. ECF No. 8 at 3–4. Request No. 7 seeks from Plaintiff the same—all emails, notes, writings, texts, or recordings made between Plaintiff and any individual employed by those same entities. ECF No. 9-2 at 3. The Court will modify the Request to read as follows: "Request No. 4: Please produce all emails from the email address poakeson@centuryfasteners.com made between Paul Oakeson and any individual employed at the following entities from August 1, 2021 to present [same list of 18 entities]." Century very well may be a better source for acquiring emails sent via its own email server. But there is no reason to think that Century would be considered a better source for the other information sought by Request No. 4.

### 4.2 Subject to Attorney Client Privilege and/or Work Product Doctrine

Century also argues that Request No. 3 constitutes a "flagrant attempt to acquire privileged communications." ECF No. 8 at 6. Request No. 3 seeks from Century "all communications between Century Fasteners Corporation and Matthew V. Fisher regarding Paul Oakeson." *Id*. at 3. Defendant does not substantively address this argument apart from baldly asserting that it is "not requesting privileged documents or information." ECF No. 11 at 9. But to the extent that it is, Defendant writes, "Century may cite the specific privilege in its objections when it responds to the subpoena"

Page 9 of 17
Case 2:22-cv-00698-JPS    Filed 01/24/23    Page 9 of 17    Document 14

or the Court may modify the subpoena to protect privileged information. *Id*.

"Because jurisdiction in this case relies solely on the diversity of the parties' citizenship, Wisconsin state law governs attorney-client privilege." *DeMarco v. Chomas*, No. 08-CV-143, 2008 U.S. Dist. LEXIS 90031, at *4 (E.D. Wis. Oct. 23, 2008) (citing Fed. R. Evid. 501). In Wisconsin, "a client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." Wis. Stat. § 905.03(2). "Confidential communications are defined as "not intended to be disclosed to 3rd persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." *DeMarco*, 2008 U.S. Dist. LEXIS 90031, at *4 (quoting Wis. Stat. § 905.03(1)(d)). To put it simply, "the attorney-client privilege shields communications between a client and her lawyer if the client is seeking legal advice and the communications are made in confidence for that purpose and not waived." *Profit Point Tax Techs., Inc. v. DPAD Grp., LLP*, 336 F.R.D. 177, 181 (W.D. Wis. 2020) (internal citations omitted). "To be sure, the attorney-client privilege protects communications made from a client to an attorney who is acting as an attorney . . . . " *Baldus v. Members of the Wis. Gov't Accountability Bd.*, Nos. 11-CV-562-JPS-DPW-RMD and 11-CV-101-JPSS-DPW-RMD, 2011 U.S. Dist. LEXIS 142338, at *6 (E.D. Wis. Dec. 8, 2011).

Matthew V. Fisher ("Fisher") represents both Plaintiff and Century. He was retained by Century in April 2022 "with regard[] to [Defendant's] threatening letters to [Plaintiff]." ECF No. 9 at 1. Request No. 3 expressly

seeks from Century all communications between it and its attorney, Fisher, regarding Fisher's other client, Plaintiff. It is difficult to imagine what communications, if any, would be made between Century and Fisher regarding Plaintiff that would not relate to the legal issue they are now embroiled in. That said, the "party seeking to invoke the privilege bears the burden of proving" all essential elements of attorney-client privilege. *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997). Century asserts rather baldly that "any communications between Attorney Fisher and Century regarding Oakeson are obviously covered by attorney-client privilege," ECF No. 8 at 8–9, but Century does not address the possibility that the privilege may have been waived as to specific communications or the possibility that certain communications may not have been intended to be confidential in the first place. *See Evans*, 113 F.3d at 1462 ("The attorney-client privilege shields only those communications by a client to an attorney that were intended to be confidential."). The Court will modify Request No. 3 to request "all *nonprivileged* communications between Century Fasteners Corporation and Matthew V. Fisher regarding Paul Oakeson." ECF No. 8 at 3 (emphasis added). Alternatively, to the extent that Century believes communications between it and Fisher regarding Plaintiff are privileged, Century may so assert in its objection(s) to Defendant's request.

### 4.3 Irrelevant to the Subject Matter of the Litigation

Additionally, Century argues that Requests Nos. 2 (seeking the original and all drafts of any agreements between it and Plaintiff related to his employment with Century) and 3 (seeking all communications between Century and Fisher regarding Plaintiff) seek communications that "have zero relevance to this case." ECF No. 8 at 6. As the Court noted previously, the only issue before it is whether the Choice of Law and Non-Solicitation

Page 11 of 17
Case 2:22-cv-00698-JPS    Filed 01/24/23    Page 11 of 17    Document 14

clauses in the Confidentiality and Non-Solicitation Agreement are enforceable. Whether Plaintiff violated the Non-Solicitation clause is not before the Court.

"A non-solicitation provision may be enforceable under Wis. Stat. § 103.465 if it is reasonably necessary to protect the employer and reasonable as to time, geography, and type of conduct covered." *Manitowoc Co. v. Lanning*, 906 N.W.2d 130, ¶ 62 (Wis. 2018). That provision pertains to restrictive covenants in employment contracts and provides that those which impose an "unreasonable restraint" are "illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint." Wis. Stat. § 103.465.

The Wisconsin Supreme Court has interpreted Wis. Stat. § 103.465 as establishing five prerequisites that restrictive employment covenants must meet to be enforceable. *Manitowoc*, 906 N.W.2d, ¶ 39. Those prerequisites are as follows:

> The restraint must (1) be necessary for the protection of the employer, that is, the employer must have a protectable interest justifying the restriction imposed on the activity of the employee; (2) provide a reasonable time limit; (3) provide a reasonable territorial limit; (4) not be harsh or oppressive as to the employee; and (5) not be contrary to public policy.

*Id.*, ¶ 40.

Defendant cites *Rollins Burdick Hunter of Wisconsin., Inc. v. Hamilton* and *Diamond Assets LLC v. Godina* for the proposition that the reasonableness of a restrictive employment covenant cannot necessarily be determined based solely on the covenant's text, without reference to and consideration of factual matters. 304 N.W.2d 752, 756 (Wis. 1981); 979 N.W.2d 586, 594 (Wis. App. 2022). The Wisconsin Supreme Court in *Rollins*

stated that "what is reasonable varies from case to case, and what may be unreasonable in one instance may be very reasonable in another." 304 N.W.2d at 756. "Thus, a per se rule offends the notion that the validity of a restrictive covenant is to be established by examination of the particular circumstances which surround it." *Id*. "Whether the determination of the reasonableness of a noncompetition agreement is characterized as a question of law or one of fact, it still remains one which can be made only upon a consideration of factual matters." *Id*. The Wisconsin Supreme Court stated further that it did

> not believe the determination of whether a restraint of this type is reasonably necessary for the protection of an employer can be intelligently made without a consideration of the nature and character of such information, including the extent to which it is vital to the employer's ability to conduct its business, the extent to which the employee actually had access to such information, and the extent to which such information could be obtained through other sources. As to whether the restraint is unreasonable to the employee, we do not see how such a determination could be made without considering additionally the extent to which the restraint on competition actually inhibits the employee's ability to pursue a livelihood in that enterprise, as well as the particular skills, abilities, and experience of the employee sought to be restrained.

*Id.* at 757. Similarly, the Wisconsin Court of Appeals in *Diamond Assets LLC v. Godina* stated that the reasonableness of a restrictive employment covenant cannot necessarily be determined based solely on the text of the covenant alone, without reference to extrinsic evidence. 979 N.W.2d, ¶ 24. "For example, whether a covenant is 'harsh or oppressive to the employee' ordinarily will depend on extrinsic evidence showing how the covenant

does or does not reasonably restrain the former employee given the particular circumstances." *Id.*, ¶ 25 (internal citation omitted).

It is possible, however, for a restrictive covenant to be "so restrictive that it is per se invalid under Wis. Stat. § 103.465, regardless of the circumstances that are alleged or inferable from the pleadings at the motion to dismiss stage." *Id.*, ¶ 26. For example, restrictive covenants lacking a time limitation are per se unreasonable. *Friemuth v. Fiskars Brands, Inc.*, 681 F. Supp. 2d 985, 989 (W.D. Wis. 2010) ("[T]he language of the statute supports the rationale that *some* time limit is always required under § 103.465 . . . [it] suggests that *some* time limitation is necessary, supporting the view that a restrictive covenant lacking any time limitation is per se unreasonable."); *id.* at 991 ("Because the provisions lack any time limitation, I agree with plaintiff that the covenants are unenforceable. There is no need for additional development of the record to conclude as much."). The Non-Solicitation clause in this case does have a time limitation, so it is not per se invalid on that basis. *See* ECF No. 9 at 2 (reciting language of the Non-Solicitation clause, including its reference to "twelve (12) months following his or her separation from such employment").

A restrictive employment covenant may also be per se invalid for lack of a territorial limitation. "By flatly barring plaintiff from competing with defendant anywhere, the covenant contains *no* territorial limitation. This fails both the statutory requirement that there be some limit to the restriction on competition and the requirement that that limit be reasonable." *Wiemerslage v. Astec, Inc.*, No. 11-cv-383-wmc, 2012 U.S. Dist. LEXIS 205400, at *12–13 (W.D. Wis. May 7, 2012). "As a result, the court finds that the limit is both invalid per se, as well as overbroad and unreasonable under the circumstances." *Id.* at *13.

"[T]erritorial limits need not be expressed in geographical terms," however. *Id*. This requirement can be satisfied by a limitation expressed in terms of "particular clients or customers." *Id*. (internal citation omitted). "When [the limitation] is not explicitly geographic, however, the territorial limitation must still describe 'specific customers or activities' that delineate a 'territory'—otherwise, it cannot be said the employee is barred from competing in a specified territory as required by the statute." *Id*. (internal citation omitted).

Here, the Non-Solicitation clause makes no reference to any geographic limitation. It does, however, make reference to "particular clients or customers"—specifically, "any customer of ASCS which was a customer at any time during the last one year of Employee's employment with ASCS." *Id*. (internal citation omitted); ECF No. 8 at 2. Limitations of this type are generally "accepted as a territorial limit" because they apply to a finite list of people. *See Wiemerslage*, 2012 U.S. Dist. LEXIS 205400, at *14 (citing *Techworks, LLC v. Wille*, 770 N.W.2d 727, ¶¶ 11–12 (Wis. Ct. App. 2009)). The Court in *Techworks* concluded that such a limit "passes the muster of reasonableness because although it has no geographic limitation, the restricted list is substantially narrowed because it *only* forbids [the former employee] from working for those customers whom [he] actually serviced during the two years before he left [the employer]." 770 N.W.2d 727, ¶ 12.

While it is true that here the Non-Solicitation clause refers not only to those customers that Plaintiff serviced, but instead to all those who were a customer of ASCS during the last year of Plaintiff's employment, that does not appear to be a material distinction. In *Rollins*, the applicable provision provided that the employee could not directly or indirectly, for a period of

two years following the termination of their employment, solicit, contact, or otherwise do any competitive business with any individual, firm, corporation, partnership, organization, or association who was a customer or client of the employer for the previous two years. *Rollins,* 304 N.W.2d at 753. That provision, too, restricted competition with any customer of the employer, generally—not just customers specifically serviced by the employee. The principal issue of the case, as the court put it, was "whether the instant agreements are invalid per se because they purport to prohibit [the employees] from soliciting even . . . clients whom they had not serviced and with whom they had had no contact." *Id.* at 755. The court answered that inquiry in the negative and declined to find the provision invalid per se on that basis.

As such, the Court cannot conclude at this juncture that the "provision is enforceable on its face." ECF No. 12 at 5. The question is whether the information sought (nonprivileged communications between Century and Fisher regarding Plaintiff and the original and all drafts of employment-related agreements between Century and Plaintiff) may go to whether the restrictive covenant is reasonably necessary to protect the Defendant as an employer and/or to whether the covenant is too harsh or oppressive to Plaintiff. The court in *Rollins* wrote that it did not see "how such a determination could be made without considering . . . the extent to which the restraint on competition actually inhibits the employee's ability to pursue a livelihood in that enterprise." *Rollins*, 770 N.W.2d at 757. Plaintiff's employment-related agreements with Century and Century's nonprivileged communications with Fisher regarding Plaintiff may be relevant to the extent to which the Non-Solicitation clause inhibits Plaintiff's ability to "pursue a livelihood in that enterprise." *Id*.

Accordingly, the Court will deny the motion to quash to the extent it seeks to quash the subpoena on the basis of irrelevance.

Accordingly,

**IT IS ORDERED** that Non-party Century Fastener Corporation's motion to quash the subpoena issued to it by Defendant Aero-Space Computer Supplies, Inc., ECF No. 7, be and the same is hereby **GRANTED in part and DENIED in part** in accordance with the terms of this Order.

Dated at Milwaukee, Wisconsin, this 24th day of January, 2023.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge

Page 17 of 17
Case 2:22-cv-00698-JPS   Filed 01/24/23   Page 17 of 17   Document 14